THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ERIN N. GOEKING, Defendant-Appellee.

Second District No. 2—01—1358

Opinion filed December 6, 2002.

Douglas P. Floski, State's Attorney, of Oregon (Martin P. Moltz and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Robert T. Hanson, of Moehle, Smith, Nieman, Hanson & Hahn, P.C., of Mt. Morris, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Erin Goeking, was charged with possession of drug paraphernalia (720 ILCS 600/3.5 (West 2000)) following a search of her car. The State appeals the trial court's order granting defendant's motion to quash her arrest and suppress the evidence, contending that defendant validly consented to the search.

Troy Kindle, a Polo police officer, was on patrol when he saw defendant's car parked on the wrong side of the street and then saw it pull away from the curb without a turn signal. Kindle made a traffic stop and ascertained the identities of defendant, who was driving, and her three passengers. Defendant seemed fidgety and nervous and seemed "adamant about leaving."

Kindle ran checks on all four of the car's occupants and discovered nothing suspicious. Defendant's eyes looked "glossy" and were red and bloodshot. In response to his question, defendant said that there was nothing in the car that "shouldn't be in the vehicle." Kindle had her step out of the car to see whether she was intoxicated. He did not smell any alcohol on her breath. Kindle then explained why he had her get out of the car, issued a verbal warning for the traffic violations, and told her that she was free to go.

Defendant began walking back toward her car. Kindle then asked her if she had any "knives, guns, drugs, dead bodies, grenades, rocket launchers, anything that shouldn't be in the vehicle." She said she did not. Kindle then asked if she had any objection to his searching the vehicle. She said she did not.

Defendant testified that she did not feel free to continue walking toward the car or to drive away after the officer asked her if she had anything illegal. She did not feel she had any choice in permitting the

search because the officer would become "suspicious" if she refused consent.

Kindle then searched the car and found a pen and a socket wrench containing THC residue. At about that time, defendant's mother arrived at the scene. Kindle told her that he was going to take defendant to the police station.

Defendant moved to quash the arrest and suppress the evidence. She argued that the purpose of the traffic stop was complete after Kindle issued the verbal warning and told her she was free to leave. Therefore, under *People v. Brownlee*, 186 Ill. 2d 501 (1999), her consent was invalid because Kindle prolonged the stop merely to try to get consent to search and she did not feel that she could refuse. The trial court granted the motion. The State filed a certificate of impairment and a timely appeal.

The State contends that the trial court erred in suppressing the evidence. It argues that this case is distinguishable from *Brownlee* because the officer expressly told defendant that she could leave.

■ In reviewing a ruling on a motion to suppress, we must accept the trial court's factual findings unless they are against the manifest weight of the evidence. *People v. Gonzalez*, 324 Ill. App. 3d 15, 19 (2001). If we accept the trial court's findings, we review *de novo* whether suppression is warranted under these facts. *People v. Gonzalez*, 184 Ill. 2d 402, 411-12 (1998).

In *Brownlee*, defendant was a passenger in a car that police stopped for a minor traffic violation. After one of the officers returned the driver's license and insurance card, he paused for about two minutes, then asked for permission to search the car. The driver agreed and the subsequent search revealed marijuana. *Brownlee*, 186 Ill. 2d at 506-07.

The supreme court held that the purpose of the traffic stop was complete when the officer returned defendant's license. However, the officers improperly prolonged the stop by waiting two minutes, then requesting consent to search the car. Because the driver would not have felt free to leave under the circumstances, his consent was invalid. *Brownlee*, 186 Ill. 2d at 519-20.

■ This case is similar to *Brownlee*. The purpose of the stop was complete when Kindle issued a verbal warning about the traffic violations, but he prolonged the stop by asking defendant whether she had anything illegal in the car and requesting permission to search it.

The State argues that this case is distinguishable from *Brownlee* because the officer expressly told defendant that she was free to leave. Thus, the subsequent conversation, including the consent to search, was consensual. The State fears that if the officer's express statement

that the driver may go does not end the seizure and render a subsequent conversation consensual, then we will be creating a *per se* rule that a consensual encounter may never follow a traffic stop.

*Brownlee* held that the test was whether under all the circumstances a reasonable person in the driver's position would feel free to leave. *Brownlee*, 186 Ill. 2d at 520. While telling the driver that she is free to go is certainly a relevant consideration, it is not dispositive. Here, the officer told defendant that she could leave, but then almost immediately questioned her about illegal items in the car and asked for permission to search. Thus, the officer at best sent defendant mixed signals.

*Brownlee* recognizes the inherently coercive nature of a traffic stop. While the court stopped short of saying that a voluntary encounter could never follow a traffic stop, we would think that such cases would be rare. It is difficult to imagine many cases in which a motorist would voluntarily remain at the scene of a traffic stop to engage the officer in casual conversation.

In any event, we need not speculate whether under other circumstances an encounter following a traffic stop is voluntary. The trial court here found that defendant in fact did not feel free to leave and the State does not challenge this finding.

It is certainly reasonable to conclude that defendant did not feel free to simply drive away from Officer Kindle. The 17-year-old defendant, with no previous experience with law enforcement, was stopped by the officer and questioned about illegal items in her car. The officer suspected that she was under the influence of alcohol and had her step out of the car to evaluate her condition. Then, immediately after telling her that she could go, the officer again asked her whether she had any contraband in the car and asked for permission to search. The court could reasonably find that a person in defendant's position would not have felt free to leave.

The evidence shows that in fact defendant did not think that she could leave the scene. She testified that she felt she had no choice when asked for her consent to search. Kindle never said that she had the right to refuse to consent. Moreover, Kindle had testified that defendant initially was "adamant" about leaving. When he told her she was free to leave, she began walking toward her car. However, when he again began questioning her, she immediately stopped. The record supports the trial court's determination that defendant did not feel she had a choice in the matter. Although the *Brownlee* court noted that the test of whether a reasonable person in the driver's position would feel free to leave is an objective one, a driver's subjective belief is nevertheless relevant. *Brownlee*, 186 Ill. 2d at 520.

Citing *People v. Gherna*, 325 Ill. App. 3d 157 (2001), the State argues that the officer's conversation with defendant after the traffic stop ended was justified by the community caretaking doctrine. However, community caretaking does not involve a seizure. *People v. Murray*, 137 Ill. 2d 382, 387 (1990). In *Gherna*, the court held that defendant was never seized. *Gherna*, 325 Ill. App. 3d at 162. Here, it is undisputed that a seizure occurred when Kindle effected the traffic stop. Thus, *Gherna* is inapplicable.

In light of its finding, the trial court could properly conclude that defendant's consent to the search was involuntary. Accordingly, the court properly suppressed the evidence found in the search. See *Brownlee*, 186 Ill. 2d at 521.

The judgment of the circuit court of Ogle County is affirmed.

Affirmed.

GROMETER and CALLUM, JJ., concur.